Case 1:14-cv-00021 Document 10 Filed 05/29/15 Page 1 of 9

F I L E D
Clerk
District Court
MAY 29 2015
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| GARY RAMSEY,<br><br>      Plaintiff,<br><br>vs.<br><br>ESTHER MUNA, Individually and in her Official Capacity as CEO of the Commonwealth Healthcare Corporation; JEANOLIVIA GRANT, Individually and in her Official Capacity as Chief of the OB/GYN Department, Commonwealth Healthcare Corporation; SHERLEEN OSMAN, Individually and in her Official Capacity as Director of Medical Affairs, Commonwealth Healthcare Corporation; JOSEPH KEVIN VILLAGOMEZ; the COMMONWEALTH HEALTHCARE CORPORATION; the COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; and DOES 1-10,<br><br>      Defendants. | 1:14-CV-00021<br><br>**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

Physician Gary Ramsey alleges that administrators and government officials at Saipan's lone public hospital unlawfully denied him hospital privileges from 2009 through 2011, and again from October 2013 to the present, each time without affording him procedural protections or timely decisions on his applications as mandated by the hospital's bylaws. He seeks compensatory, declaratory, and injunctive relief against the entity that runs the hospital—the Commonwealth Healthcare Corporation ("CHC")—the individuals associated with granting hospital privileges in their personal and official capacities, and the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI").

1

As relevant to this motion, Ramsey asserts causes of action based on denial of federal due process guarantees pled under 42 U.S.C. § 1983, and common law contract and tort claims based on Commonwealth law. He also asserts in his seventh and eighth causes of action that the hospital's bylaws create contractual obligations between the hospital and himself, and that by failing to abide by the bylaws, Defendants violated his federal and CNMI constitutional rights against the impairment of contracts. (Compl. ¶¶ 72-79, ECF No. 1.)

Defendants seek to dismiss the complaint in two ways. First, they argue that the Commonwealth and CHC enjoy sovereign immunity from suits filed in federal court and are not "persons" under 42 U.S.C. § 1983, and that they should accordingly be dismissed from this case. (Mot. to Dismiss 1, ECF No. 2.). Second, Defendants contend that Ramsey's seventh and eighth causes of action under the contracts clauses of the federal and CNMI constitutions fail to state a claim because Ramsey does not allege that the legislature passed a law impairing a contract. (*Id.*) The court will deny Defendants' motion to dismiss on sovereign immunity grounds, but grant the motion to dismiss with respect to the "persons" argument and the contracts clause claims.

## II. DISCUSSION

### A. Jurisdiction

Defendants argue that the Commonwealth and CHC enjoy sovereign immunity from suit on the CNMI law claims in federal court.

The term sovereign immunity in federal caselaw generally means that a state cannot be sued in federal court without its consent—even when a federal court would have jurisdiction. *See Hans v. Louisiana*, 134 U.S. 1, 16 (1890). In limited circumstances, Congress can abrogate a reluctant state's immunity to federal lawsuits in federal courts, *see Central Va. Cmty. College v. Katz*, 546 U.S. 356, 359 (2006) (bankruptcy), but states have absolute control over where they

may be sued on the basis of their own laws. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

In *Fleming v. Department of Public Safety*, the Ninth Circuit held that the Commonwealth waived its immunity to suits in federal court based on federal law. 837 F.3d 401, 407 (1988). The court reasoned that because the Commonwealth's founding document (the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant")) did not expressly include the traditional shorthand for sovereign immunity—the Eleventh Amendment to the U.S. Constitution—the drafters of the Covenant must have intended to waive it. *Id.* at 405-06.

That rationale has generated skepticism. For instance, in *Norita v. Commonwealth of the Northern Mariana Islands*, a separate panel of the Ninth Circuit identified potential problems with *Fleming*'s rationale, but nevertheless found that only an en banc panel could overturn the decision. 331 F.3d 690, 695-97 (2003). Notably, *Norita* observed that the legislative history behind the Covenant, particularly the drafters' intention that the Commonwealth have privileges similar to Puerto Rico, including self-governance, supported the idea that sovereign immunity was a "fundamental postulate implicit to the Covenant's history and design." 331 F.3d at 695. Indeed, at the time the Covenant was drafted, Puerto Rico enjoyed sovereign immunity.[1] *Id.* (citing *Ursulich v. Puerto Rico Nat'l Guard*, 384 F. Supp. 736, 737 (D. Puerto Rico 1974)); *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991) ("The eleventh amendment, despite the absence of any express reference, pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State."). However, because the *Norita*

---

[1] In fact, the Commonwealth is the only United States territory that lacks sovereign immunity. *See People of Porto Rico v. Rosaly y Castillo,* 227 U.S. 270, 273-75 (1913) (Puerto Rico); *Richardson v. Knud Hansen Mem'l Hosp.*, 744 F.2d 1007, 1010 (3d Cir. 1984) (Virgin Islands); *Marx v. Guam*, 866 F.2d 294, 297-99 (9th Cir. 1989) (Guam).

panel was not free to reassess *Fleming* on the basis of the inter-circuit conflict it created with the First Circuit and Puerto Rico, the opinion was left intact. 331 F.3d at 696-97.

In addition to the Ninth Circuit, this district court has also grappled with the Commonwealth's sovereign immunity. *See Christian v. Northern Mariana Islands*, No. 1:14-CV-00010, 2015 WL 1943773, at *3-8 (D.N. Mar. I. April 24, 2015). In *Christian*, a case strikingly similar to this one in which the Commonwealth was sued in federal court on the basis of CNMI law, Chief Judge Manglona noted that *Fleming* departed from sound principles of statutory construction by limiting its analysis of the Covenant to section 501, which guarantees individual constitutional rights, rather than considering the Covenant as a whole. *Id.* at 7–8. Moreover, *Christian* pointed out that *Fleming* inverted the Supreme court's stricture that a state must unequivocally express its waiver of sovereign immunity—particularly with respect to its willingness to be sued in federal court—before such a court may assert jurisdiction. *Id.* at 8 (citing *Atascedero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (holding that a waiver of immunity must specify a state's willingness to be sued in federal court—not just any court)). In *Fleming*, the court found that the Covenant's silence on the Eleventh Amendment demonstrated waiver, rather than construing the silence as the absence of waiver. *See Pennhurst*, 465 U.S. at 99.

Nevertheless, Chief Judge Manglona recognized that *Fleming* remained binding on this court and faithfully applied it by holding that the Commonwealth had waived sovereign immunity to suits filed in federal court based on state law. *Christian*, 2015 WL 1943773 at 8. Accordingly, the court in *Christian* recognized its jurisdiction over all the claims. *Id.* Although *Christian* in not binding on this decision, its reasoning is persuasive.

Like *Norita* and *Christian*, this court finds that the rationale in *Fleming* controls despite its problems. Defendants argue that *Fleming*'s finding that the Commonwealth waived immunity can be restricted to claims based on federal law, rather than state law. (Mot. 3–6.) Yet, such a reading would ignore *Fleming*'s rationale that "when the drafters of the Covenant rejected the protections of the eleventh amendment, they must have also intended to forego any sovereign immunity from suit in federal court that the Commonwealth might otherwise enjoy." 837 F.2d at 407. In other words, if the Covenant drafters intended to waive the Commonwealth's immunity *only* to lawsuits based on federal law, then their decision to exclude the entire Eleventh Amendment—which includes immunity to suits based on both state *and* federal law—was illogical. Based on *Fleming*, the court is left with no alternative but to find that the Commonwealth's waiver of sovereign immunity applies to both federal and state causes of action. *See Christian*, 2015 WL 1943773 at 8. Accordingly, the court's jurisdiction is not disturbed. *See* 28 U.S.C. §§ 1331, 1367.

B.  *Failure to State a Claim: Section 1983 Claims*

Defendants argue that the Commonwealth and CHC should be dismissed from the federal claims because Ramsey's cause of action for each claim, 42 U.S.C. § 1983, does not apply to territories or their agencies. (Mot. 7.) The court agrees that neither the Commonwealth nor CHC are "persons" subject to suit under section 1983.

Section 1983 creates a cause of action against any "person" who violates an individual's federal "rights, privileges, or immunities" under the color of state law. 42 U.S.C. § 1983. However, neither states nor territories are persons for purposes of section 1983, and therefore cannot be sued on that basis. *Ngiraingas v. Sanchez*, 495 U.S. 182, 190 (1990). Accordingly, the Commonwealth will be dismissed with prejudice from the section 1983 counts.

State agencies and "instrumentalities" also escape the definition of person under section 1983. *See Aguon v. Commonwealth Ports Auth.*, 316 F.3d 899, 904 (9th Cir. 2003). To determine whether a state-sponsored entity is a person for purposes of section 1983, courts consider five factors: (1) whether a judgment would be paid from the state's treasury; (2) whether the entity performs governmental functions; (3) whether the entity may sue or be sued in its own name; (4) whether the entity may take property in its own name (or only the name of the state); and (5) the corporate status of the entity. *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (applying the factors in the sovereign immunity context). The first factor is the most important. *See Aguon*, 316 F.3d at 902.

CHC was established by Public Law 16-51 in January 2010, with the stated goal of creating a "professionally managed, nationally accredited, independent public healthcare institution that is *as financially self-sufficient and independent of the Commonwealth Government as is possible*." 2009 Mar. I. Pub. L. 16-51 § 2 ("Findings and Purpose") (emphasis added). CHC operating funds are held apart from the general treasury, but are funded in part by legislative appropriations. 3 CMC [N. Mar. I. Code] § 2828. Most recently, the legislature appropriated $41,560,938 for CHC in the 2015 budget. *See* 2014 N. Mar. I. Pub. L. 18-66, § 301. Of course, CHC also receives payment for services provided. *See* 3 CMC § 2828(b).

"As an instrumentality of the Commonwealth, [CHC] and all property acquired by [CHC], and all revenues and income therefrom are exempt from taxation and business regulations by the Commonwealth or by any political subdivision or public corporation thereof." 3 CMC § 2831. CHC carries out the "duties provided by law to the Department of Public Health," which it replaced. 3 CMC §§ 2824(a), 2834. It may sue or be sued in its own name, and may acquire property. 3 CMC § 2824(e), (i). CHC has a seven-member board of directors, five

6

of whom, including the chief executive officer, are nominated by the Governor with the advice and consent of the Senate. *See* 3 CMC § 2825(b). Board members may be removed by the Governor "only on grounds of gross neglect or dereliction of duty." *Id.* CHC is a "public corporation," which means a "corporation that is created by the state as an agency in the administration of civil government" or a "government-owned corporation that engages in activities that benefit the general public." *Black's Law Dictionary*, 418 (10th ed. 2014).

Applying the *Mitchell* factors, the court concludes that CHC is an arm of the Commonwealth entitled to sovereign immunity. The first and second factors, considered together, favor immunity. *See Aguon*, 316 F.3d at 902. The Commonwealth legislature appropriated more than $40 million for CHC this year, which means that even a relatively small judgment would likely be paid by Commonwealth funds. Additionally, CHC performs the duties of the Department of Public Health and operates a healthcare system for the Commonwealth that includes the only hospital on Saipan, the Tinian Health Center, Rota Health Center, the Women's Clinic, the Children's Clinic, and the Community Guidance Center. 3 CMC § 2823(e). The operation of these facilities and the functions they provide constitute central governmental functions. As the sole provider of hospital and public health services on island, any large judgment against CHC would likely require an infusion of cash from the legislature to maintain necessary public health operations. *See Aguon*, 316 F.3d at 902-03 (finding that because the Commonwealth Ports Authority ("CPA") conducted public functions, if it "were to be faced with a large money judgment which it could not pay, the Commonwealth would be compelled to protect its island economy by responding with an appropriation to provide the citizens of the Commonwealth with essential seaport and airport services"). In this instance, the Commonwealth would ensure that the only hospital on Saipan and the operator of the health

centers on the less populated islands of Tinian and Rota continue to provide public health services.

The third and fourth factors favor section 1983 personhood; CHC can sue and be sued in its own name and may take property in its own name. The fifth factor favors neither side. *See Aguon*, 316 F.3d at 904 ("The Commonwealth's power over the make-up of the board on the one hand, and the board's authority to exercise its wide-ranging powers without prior government approval on the other, leaves the balance in equipoise."); *see* 2 CMC § 2123 (providing that the Governor can remove members of the CPA for cause). In sum, two factors weigh against 1983 personhood, two factors in favor and one factor neutral. However, because the first two factors weigh heavily in favor of immunity, the press of the less important third and fourth factors is not sufficient to tip the scales in favor of finding that CHC is a section 1983 person. Therefore, CHC will be dismissed from the section 1983 claims with prejudice.

*C. Failure to State a Claim: Contracts Clause Claims*

Finally, Defendants argue that the claims based on the contracts clauses fail to state a claim because they do not allege that the Commonwealth passed a law impairing the obligation of contracts. The court agrees.

The contracts clause of the U.S. Constitution states that no state shall pass any "law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1. The Commonwealth Constitution almost identically provides: "No law shall be made that is . . . a law impairing the obligation of contracts." N.M.I. Const. art. I, § 1. Because the Commonwealth language was clearly patterned on the U.S. Constitution, the court will address the claims together. *Cf. Commonwealth v. Attao*, 2005 MP 8 ¶ 21 (applying federal law to analyze the Commonwealth confrontation clause).

To state a claim under the contracts clause, a plaintiff must not only allege that a state impaired his contract, but that it did so by legislative act. *See New Orleans Waterworks Co. v. Louisiana Super-Refining Co.*, 125 U.S. 18, 30 (1888) (noting that to state a claim under the contracts clause, "not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state"); *Cycle Barn, Inc. v. Arctic Cat Sales Inc.*, 701 F. Supp. 2d 1197, 1202 (W.D. Wash. 2010) (stating that an element of a contracts clause claim is whether a change in the law has impaired a contractual relationship). Here, the complaint does not allege that the Commonwealth passed any law impairing Ramsey's alleged contractual relationship with CHC. Because the entire basis of Ramsey's seventh and eighth claims—that CHC breached a contractual relationship by ignoring its bylaws—cannot state a cause of action under the contracts clause, the court will dismiss those claims with prejudice.

### III.   CONCLUSION

For the reasons stated above, it is hereby ORDERED that:

- The Commonwealth and CHC are dismissed from counts 1-4 with prejudice;
- Counts 7 and 8 are dismissed with prejudice; and
- Defendants shall file an answer no later than 14 days after this order issues.

SO ORDERED this 29th day of May, 2015.

_____
HEATHER L. KENNEDY
Magistrate Judge