FILED
Clerk
District Court
DEC 21 2018
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| GARY RAMSEY, <br><br> Plaintiff, <br><br> vs. <br><br> ESTHER MUNA, *et al.*, <br><br> Defendants. | Case No.: 14-cv-00021 <br><br> **ORDER AND DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

## I. Introduction

Before the Court are three motions to dismiss Plaintiff's First Amended Complaint (ECF No. 84), filed by Defendants Sherleen Osman (ECF No. 92), the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI," ECF No. 93), and Jeanolivia Grant (ECF No. 94). Defendants Esther Muna (ECF No. 95), Joseph Kevin Villagomez (ECF No. 96), and Nancy Gottfried (ECF No. 99) join in Grant's Motion to Dismiss. Plaintiff filed oppositions to all three motions (Opp'n to CNMI, ECF No, 118; to Grant, ECF No. 119; to Osman, ECF No. 120), and Defendants filed replies (Grant Reply, ECF No. 121; CNMI Reply, ECF No. 122; Osman Reply, ECF No. 123). The matter came on for a hearing on June 29, 2018.

Having carefully considered the papers and the oral arguments of counsel, this Court GRANTS the motions to dismiss with prejudice as to the federal-law claims, based on failure to state a claim and qualified immunity. The Court declines to exercise pendant jurisdiction over the remaining

Commonwealth-law claims, and therefore GRANTS the motions to dismiss those claims without prejudice.

## II. Background

### a. Factual Background

This narrative is drawn from well-pleaded factual allegations in the First Amended Complaint ("FAC," ECF No. 84), which when deciding a motion to dismiss the court assumes to be true and construes in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Plaintiff Gary Ramsey is a physician specializing in obstetrics, gynecology, and women's health. (FAC ¶ 15.) He has been licensed to practice in the CNMI since 1999. (FAC ¶ 16.) He worked for the Commonwealth Health Center ("CHC") from 1999 to July 2007, then at the Department of Public Health until September 2010. (FAC ¶ 17.) CHC is the only hospital in the CNMI and is operated by the Commonwealth Healthcare Corporation ("CHCC"), a public corporation. (FAC ¶ 18.)

On November 10, 2009, Ramsey applied for hospital privileges at CHC. (FAC ¶ 19.) By December 15, 2009, all required signatures for approval of the application had been obtained. (*Id.*) Defendant Muna had signed for Defendant Villagomez, the Secretary of Health. (FAC ¶ 22.) Ramsey claims his right to exercise hospital privileges vested on December 15, 2009, but he was not permitted to do so until two years later. (FAC ¶¶ 23–26.) His hospital privileges were valid until January 1, 2014. (FAC ¶ 30.)

In June 2013, new Medical Staff Bylaws ("2013 Bylaws") went into effect. (FAC ¶ 28.) Ramsey alleges that "the 2013 revisions to the Medical Staff By-Laws were not duly considered by the medical staff but were largely dictated by Defendant Muna and implemented by Defendant Osman." (FAC ¶ 57.) He further asserts that any modification in the 2013 Bylaws affecting his substantial rights under the 2008 Bylaws do not apply to him. (FAC ¶ 28.) Ramsey claims he had an entitlement to renew his privileges absent affirmative action by the hospital to cancel them or deny renewal. (FAC ¶ 30.)

On October 4, 2013, Ramsey was told by four hospital and public health employees that his privileges had expired and that he was no longer allowed in the medical records department. (FAC ¶ 31–32.) That afternoon, Defendant Muna sent Ramsey an email confirming the suspension. (FAC ¶ 32.) After a telephone conversation between Warren Villagomez and Muna, Ramsey was allowed to complete his work in medical records but told he must then leave the hospital. (FAC ¶ 33.) At the time, he was no longer under contract to CHC and was employed by Pacific Fertility Institute ("PFI"). (FAC ¶ 31.)

On October 11, 2013, Ramsey sent an email to the medical Chief of Staff asking whether his privileges were still in force, and he followed up with an email on October 14 to the Vice Chief of Staff; he did not receive a reply to either one. (FAC ¶ 34.) On October 29, he sent a memorandum to the Medical Executive Committee about the apparent suspension and demanded a hearing; again, he received no response. (FAC ¶ 35.)

Toward the end of October 2013, more than two months before his hospital privileges were to expire, Ramsey began the process to renew his privileges. (FAC ¶ 41.) On or about October 29,

Defendant Grant, head of the OB/GYN department, offered to take Ramsey's application to the Credentials Committee, and Ramsey agreed. (FAC ¶ 41.) He sent several follow-up emails to credentialing personnel and received no response. (FAC ¶ 42.) On December 26, he emailed Defendant Muna for an update. (*Id.*) Muna responded that she had not seen a recommendation or rejection from the Credentialing Committee with respect to an application for new privileges. (FAC ¶ 43.) Ramsey had not applied for new privileges, but to renew existing privileges. (FAC ¶ 44.)

On January 20, 2014, Ramsey emailed Grant for an update on his application. (FAC ¶ 45.) The next day, Grant replied that necessary documents were still missing from his credentials file. (FAC ¶ 46.) On February 21, 2014, more than 90 days after Ramsey had given his application documents to Grant, the CHCC Credentialing Coordinator sent Ramsey an email notifying him that his application for new privileges had been received on February 10. (FAC ¶¶ 50, 52.) In February 2014, Ramsey provided the CNMI Attorney General notice of his claim of deprivation of hospital privileges. (FAC ¶ 68.)

After he filed suit in this Court in September 2014, Ramsey alleges that Defendants "embarked on a course of conduct designed to manufacture a colorable justification for their unlawful deprivation of the hospital privileges to which plaintiff was and is entitled." (FAC ¶ 69.) This included an ad hoc review of a fetal death that occurred in April 2013 and another incident from October 2012. (FAC ¶¶ 72, 115.) On April 17, 2015, Ramsey received a letter signed by Muna, stating that his application for privileges had been denied, but it was silent as to the grounds for the denial. (FAC ¶ 123.) On May 14, 2015, Muna's office emailed Ramsey a second letter purporting to deny his application for privileges

that did contain the grounds for the denial and stated that he had no right to appeal. (FAC ¶¶ 129–130.)

### b. Procedural Background

On November 27, 2017, Ramsey filed a First Amended Complaint, in which he brings four federal causes of action based on claims of unlawful deprivation of property and liberty without due process against the Commonwealth, CHC, and multiple individuals employed by CHC. He also brings Commonwealth-law claims for tortious interference with contract, tortious interference with covenant of good faith and fair dealing, breach of official duty, conspiracy, and intentional infliction of emotional distress.

Ramsey's first cause of action is for unlawful deprivation of property without due process against Defendants in their official capacity for the wrongful denial of his current right to hospital privileges at CHC. (FAC at 33.) He asks for a declaratory judgment "that his privileges are presently in force at CHC" and an injunction prohibiting the individual defendants from refusing to recognize his privileges or interfering with his exercise thereof. (FAC ¶¶ 135–37.)

His next three causes of action are federal-law claims for damages. The second cause of action is against Defendant Villagomez for wrongful deprivation of hospital privileges from December 15, 2009 until December 15, 2011. (FAC ¶ 140.) His third cause of action is against Defendant Muna and Doe defendants for wrongfully interfering with his exercise of his privileges to access and update medical records in October 2013. (FAC ¶ 145.) Ramsey's final federal cause of action is against

Defendants Muna, Grant, Osman and Gottfried for failure to "process, approve, acknowledge and recognize renewal of [his] hospital privileges." (FAC ¶ 148.)

Defendant Osman filed a motion to dismiss for failure to state a claim and asserting she is entitled to qualified immunity. (ECF No. 92 at 2.) Osman argues that Ramsey did not allege sufficient facts that she deprived him of any right. (ECF No. 92-1 at 12–13.) Moreover, she asserts that she is entitled to qualified immunity since Plaintiff has no clearly established interest in hospital privileges. (*Id.* at 18–19.) Defendant Commonwealth filed a motion to dismiss the first cause of action for failure to state a claim and the Commonwealth-law causes of action for lack of subject matter jurisdiction. (ECF No. 93 at 1–2.) As to the federal cause of action for unlawful deprivation of property, the Commonwealth argues that there is no cognizable property right in the renewal of hospital privileges, without which Ramsey cannot state a plausible claim for declaratory or injunctive relief. (*Id.* at 6.) Defendant Grant filed a motion to dismiss for failure to state a claim because hospital privileges are neither a property right nor a liberty interest. (ECF No. 94-1 at 13.) Additionally, Grant asserts qualified immunity. (*Id.* at 9.) Defendants Muna, Villagomez, and Gottfried each filed a joinder in Defendant Grant's Motion to Dismiss. (ECF Nos. 95, 96, 97.)

### III. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

6

*Twombly*, 550 U.S. 544, 570 (2007)). In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Thus, a court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then consider whether the well-pleaded allegations could "plausibly give rise to an entitlement to relief." *Id.* at 996 (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded allegations "are 'merely consistent with' a defendant's liability," the plausibility threshold has not been satisfied. *Id.* (quoting *Iqbal*, 556 U.S. at 678.) But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### IV.  Discussion

Defendants assert that Ramsey has failed to state a claim because he has no property or liberty interest in hospital privileges, without which there can be no constitutional violation based on deprivation of those privileges. Moreover, Defendants assert that as government officials they enjoy qualified immunity from civil damages because their conduct did not violate a clearly established constitutional right understood by every reasonable official.

#### a.  Property interest

"To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes,* 748 F.3d 870, 872 (9th Cir. 2014). "The Constitution itself creates no property interests; rather, such interests 'are created and their dimensions are defined by existing rules or understandings

that stem from an independent source such as state law.'" *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Thus, in order to establish a property interest in hospital privileges, Ramsey must establish that he had a legitimate claim of entitlement grounded in existing rules or understandings stemming from an independent source. The First Circuit has held that hospital privileges are a property interest under two circumstances: (1) a state law mandate or (2) public hospital regulations guaranteeing that privileges will not be revoked without cause or a hearing. *Lowe v. Scott*, 959 F.2d 323, 338 (1st Cir. 1992) ("A public hospital, as a state employer, may create a property interest in privileges through its own regulations guaranteeing that these privileges will not be revoked without cause or a hearing. Or, in the alternative, a state may create the property interest in privileges directly by imposing the requirement, either by statute or through its courts, that all hospitals provide physicians adequate process in decisions affecting privileges."). The Fifth Circuit has held that medical staff privileges are a protected interest when "there was an explicit or implicit agreement providing for no termination of the privileges without cause and a hearing . . . or because denial of staff privileges "might effectively foreclose ... practicing in the area because of harm to (a) professional reputation and because of the lack of other (comparable) facilities." *Daly v. Sprague*, 675 F.2d 716, 727 (5th Cir. 1982) (citing *Northeast Georgia Radiological Assoc. v. Tidwell*, 670 F.2d 507, 510–511 (5th Cir. Unit B 1982) and

8

quoting *Christhlif v. Annapolis Emergency Hospital Ass'n, Inc.*, 496 F.2d 174, 178 (4th Cir. 1974) (disavowed on other grounds by *Modaber v. Culpeper*, 674 F.2d 1023 (4th Cir. 1982)).

The Ninth Circuit has acknowledged that a property interest in medical privileges can be grounded in state law. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1424 (9th Cir. 1985) (property interest in staff privileges recognized by Hawaiian law); *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 609 F. Supp. 2d. 1163, 1172 (D. Nev. 2009) ("A physician's medical staff privileges are thus a protected interest under Nevada state law.") In an unpublished decision,[1] the Ninth Circuit recognized that a Nevada public hospital's bylaws that provide certain "procedural protections, including notice and a hearing, upon the occurrence of various adverse actions, including the termination of . . . privileges or denial of reapplications for . . . privileges" may create a property interest. *Tate v. Univ. Med. Ctr*, 617 Fed. Appx. 724, 725 (9th Cir. 2015) (citing *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366–67 (9th Cir. 1976)).

Plaintiff points to no Commonwealth statute or case law recognizing a property interest in hospital privileges. Plaintiff argues that the bylaws are Commonwealth law because they are "put into effect pursuant to CNMI statutes organizing and governing the Commonwealth Healthcare Corporation, are legally required by federal law as a consequence of the hospital's relationship with the Center for Medicare and Medicaid Services (CMS), are an essential and established aspect of professional standards and practices governing the medical profession, and function as a contract

---

[1] Ninth Circuit Court Rule 36-3 provides that "[u]npublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." U.S Ct. of App. 9th Cir. Rule 36-3.

9

applying to and governing all persons involved in hospital operations and governance." (ECF No. 118 at 6.) This argument is unsupported by any legal authority and is unpersuasive.

Defendants assert that the bylaws do not have the force of law because they are not rules or regulations under CNMI law. (Grant Mem. at 10, ECF No. 94-1.) They note that the bylaws were not published and promulgated in conformity with the Commonwealth Administrative Procedures Act ("CAPA") and assert, therefore, that they "lack the force or effect of law and cannot be the basis to create a liberty or property interest in favor of Plaintiff." (*Id.*) CAPA defines regulation as "a rule which prescribes or has the force of law." 1 CMC §9101(k). A rule or regulation that has not been approved by the CNMI Attorney General and properly promulgated is not "valid or effective against any person or party nor may it be invoked by the agency[.]" 1 CMC §9102(c). Moreover, CAPA explicitly excludes from its definition of rule "[s]tatements concerning only the internal management of an agency, including, but not limited to, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property and not affecting private rights to procedures available to the public." 1 CMC §9101(m)(1).

A separate statute grants CHC the authority to "[e]stablish its internal organization and management." 3 CMC §2824(f). That statute distinguishes between CHC's ability to "[a]dopt rules and regulations necessary for the implementation of this Chapter" and to "[p]repare, adopt, amend, or repeal its bylaws[.]" 3 CMC § 2824(l), (o). A fundamental principle of statutory interpretation is to "give effect, if possible, to every clause and word of a statute . . . so that no part will be inoperative or superfluous, void or insignificant." *Stevens v. Corelogic, Inc.*, 899 F.3d 666. 673–74 (9th Cir. 2018) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883), and *Corley v. United States*, 556 U.S. 303,

314 (2009)). Application of that principle here shows that bylaws are distinct from rules and regulations. Defendants' argument that the hospital's bylaws are not Commonwealth law recognizing a property interest in hospital privileges is well founded.

The Ninth Circuit has found a property interest in privileges at a public hospital created by hospital bylaws. *See Tate*, 617 Fed. Appx. at 725. The next question is whether the CHC bylaws are sufficient to create a property interest by guaranteeing a hearing or requiring cause before any adverse action is taken regarding privileges. Ramsey's federal causes of action encompass three potential interests: (1) property interest in an initial grant of privileges (second cause of action); (2) property interest in the exercise of granted privileges (third cause of action), and (3) property and liberty interest in the renewal of privileges (first and fourth causes of action). Because his potential interests turn on slightly different facts, the Court will analyze them each in turn.

### i. Initial Grant of Privileges

As to his property interest in the privileges when he applied for them in 2009, Ramsey states that he has "a cognizable property right [in hospital privileges], vested as of December 15, 2009." (FAC ¶24.) The rights vested because "all of the required signatures for approval of his privileges had been affixed to the application." (*Id.* at ¶19.) Ramsey does not point to any bylaw in support of his contention that privileges vest when the form has been signed. Instead, he relies on a procedural requirement in the bylaws to argue that his right vested: "[T]he 'Governing Board' is obligated within 90 days to 'either accept the recommendation of the Medical Executive Committee or refer it back for

11

further consideration." (*Id.* at ¶20.) However, this provision does not lead to the conclusion that his privileges were valid once all five signatures were affixed.

The bylaws governing applications state that the "Credentials Committee recommendation to grant privileges shall be based on documented evidence of education, training and experience." (ECF No. 97-1 at 12; Art. VI, §1.B., "2008 Bylaws.") It contains no language governing what factors the Committee must consider if deferring or rejecting the application. (*Id.*) Moreover, the committee investigation is just the first step. The bylaws contain no requirement that the Medical Executive Committee or the Governing Board have cause to defer or reject an application. (*Id.* at §§1.C, 1.D.) The criteria to be considered for the initial grant is a *non-exclusive* list of *subjective* factors, including "good reputation and character" and "ability to work harmoniously with others." (*Id.* at 1.B, citing to Art. IV, §1B.)[2]

Article IV of the bylaws does not explicitly provide for an appeal from an adverse decision on an initial application for privileges. However, "Denial of Medical Staff appointment" and "Denial of requested clinical privileges" are both listed as adverse actions that constitute grounds for a hearing. (*Id.* at Art. XIV, §2.) Hearings are only upon request of the staff member. (*Id.* at §3.) At the hearing, the Medical Executive Committee shall bear the burden of persuading the Medical Review Committee, by a preponderance of the evidence, that its action or recommendation was reasonable or warranted.

---

[2] The criteria are listed under the section titled "Minimum Qualifications for Membership." (2008 Bylaws, Art. IV, §1.) Physicians must "[m]eet all of the requirements of the Credentials Committee, *including but not limited to* providing documentation to support the following: 1. Education, . . . experience and current clinical competence; 2. Evidence of adherence to the high ethical standards of their profession; 3. Good reputation and character . . .; 4. Ability to work harmoniously with others; 5. Compliance with [financial responsibility requirements]; 6. Evidence of completing appropriate Continuing Medical Education." 2008 Bylaws, Art IV, §1.B (emphasis added).

12

Even with the right to a hearing, the language in the 2008 Bylaws is insufficient to confer a property right because there is no "for cause" requirement. The criteria are open-ended and subjective, leaving room for the hospital officials to exercise discretion in an initial grant of privileges. As such, Ramsey cannot claim a legitimate entitlement to an initial grant of privileges. Therefore, his second cause of action fails.

### ii. Existing Privileges

Next, the Court must determine if the bylaws[3] create a property interest in privileges once granted by considering if they require cause or a hearing before privileges can be terminated. The 2008 Bylaws include the right to summarily suspend a medical staff member if immediate action is required to protect a patient's life, health or safety. (*Id.* at Art. XIII, §1.) Automatic suspension or limitation is also permitted if a staff member's license is revoked, suspended or restricted or they are placed on probation. (*Id.* at Art. VI, §4.) Failure to complete medical records in a timely fashion is also a basis for a limited suspension of privileges. (*Id.*) The bylaws appear to restrict the suspension or limitation of privileges to these specific circumstances, thus fulfilling the "for cause" requirement. Additionally, they explicitly grant procedural rights to staff members whose privileges have been summarily suspended. (*Id.* at §3.)

---

[3] In 2013, CHC issued new bylaws. (ECF No. 94-3, "2013 Bylaws.") Ramsey asserts that his rights relative to his privileges are governed by the 2008 Bylaws because his privileges were approved and confirmed prior to 2013. (FAC ¶28.) While the Court is unconvinced by this argument, the provisions of the 2008 and 2013 Bylaws governing correction actions (Article XII), summary restriction or suspension (Article XIII), and hearing and appellate reviews (Article XIV) are substantially similar, and the Court's analysis would be the same under both versions of the bylaws.

The 2008 Bylaws also allow the Medical Executive Committee to take corrective actions against medical staff members, including suspension and revocation of clinic privileges. (*Id.* at Art. XII, §4.E.) Such actions must be properly initiated and investigated, and take effect upon issuance of a written order. (*Id.* at Art XII.) The bylaws specifically exclude the investigation process from the procedural rules that apply to hearings and appeals. (*Id.* at §3.) However, a medical staff member may request a hearing, with all of the procedural protections provided, when the corrective action becomes final. (*Id.* at §4.C.2.)

Article XIV governs hearings and appeals. Grounds for a hearing include suspension, reduction and revocation of medical staff membership, and involuntary restriction, suspension and revocation of clinical privileges. (*Id.* at §2.) Prompt notice is required, but hearings only occur if timely requested. (*Id.* at §3.) Here, there are procedural protections, including a cause requirement, notice and an opportunity for a hearing. Therefore, the bylaws are sufficient to create a property interest in existing privileges. As such, Ramsey's third cause of action, for wrongful interference with the exercise of his privileges, survives. Notably, that claim is only against Muna and Doe Defendants who prevented him from accessing and updating medical records in October 2013. (FAC at ¶145.) It also limits the potential timeframe for damages from October 2013 until the expiration date of his privileges on January 1, 2014.

### iii. Renewal of Privileges

Finally, Ramsey claims that he is legally entitled to privileges today, but his renewal application was wrongly denied. (FAC at ¶134.) The 2008 Bylaws state that "[c]onsideration for

14

reappointment shall include an evaluation of the staff member's performance and up-dated information." (2008 Bylaws, Art. VI, §2A.) They explicitly include a right to appeal a denial under Article XIV. (*Id.* at §2E.) Like the initial grant of privileges, this section also refers to the non-exclusive list of factors in Article VI, Section 1B. (*Id.* at §2A.) The Seventh Circuit held that a similar list of criteria did not create an entitlement to reappointment. *Lim v. Cent. DuPage Hosp.,* 871 F.2d 644, 647 (7th Cir. 1989) (holding that "general and vague" criteria[4] in hospital bylaws did not create an entitlement to reappointment because "[n]o one reading this laundry list could suppose that a member of the hospital's medical staff had an entitlement to reappointment; the effect is to give the hospital virtually unlimited discretion regarding reappointment of staff members.").

Ramsey relies on one provision of the 2008 Bylaws to assert a property right in a renewal of privileges: Article VI, Section 2.F, which states "[t]he Governing Board shall not . . . refuse to renew an application . . . without conference with the Medical Executive Committee." (Opp'n to CNMI at 6, ECF No. 118.) While this is clearly a procedural limitation, Ramsey also offers it as a substantive limitation on discretion, without explaining how that is the case. In the bylaws, these decisions go through different levels of review – Credentials Committee, Medical Executive Committee, and Governing Board. (2008 Bylaws, Art. VI, §2.) Yet there is no explicit "for cause" requirement at any level of review. Therefore, even though the 2008 Bylaws do provide for some procedural protections,

---

[4] The factors in the bylaws in *Lim* included: "professional competence and clinical judgment in the treatment of patients, his ethics and conduct, his attendance at Medical Staff meetings, health status and participation in staff affairs, his compliance with the Hospital Bylaws and the Medical Staff Bylaws and Rules and Regulations, his cooperation with Hospital personnel, his use of the Hospital's facilities for his patients, his relations with other practitioners, and his general attitude toward patients, the Hospital and the public." Lim, 871 F.2d at 647.

including the right to appeal an adverse recommendation, they do not create a legitimate claim of entitlement to the renewal of privileges.

Under the 2013 Bylaws, Ramsey's claim to a property interest in the renewal of privileges fares no better. The provision governing applications for reappointment to medical staff incorporates the CHC "Credential and Privileges Review Process" policy by reference. (2013 Bylaws, Art. VI, §2.A., ECF No. 94-3.) That policy explicitly reserves the right not to renew privileges or not take action on an application. (ECF No. 94-4 at 8–9.) Even while granting some procedural protections such as the right to appeal, the 2013 Bylaws and policy explicitly give the hospital discretion to refuse to renew privileges. Since both Ramsey's first and fourth causes of action are based on a present right to privileges, which could only exist if he had a property interest in the renewal of his privileges that expired in 2014, neither cause of action can proceed.

### b. Liberty Interest

In his fourth cause of action, Ramsey asserts both a property and liberty interest in the renewal of privileges. The Supreme Court has recognized that "[t]here might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated." *Roth*, 408 U.S. at 573. The factors that the Court considered important to implicate a liberty interest were stigma or damage to reputation that would "foreclose[] his freedom to take advantage of other employment opportunities." *Id.* Ramsey has made no such allegations regarding the impact of the denial of privileges on his reputation or ability to find other employment.

16

Additionally, "[p]rocedural requirements do not create a liberty interest unless they cause a 'significant substantive reduction' in decision-making . . . or create an imperative that mandates action unless certain clearly-defined exceptions are found to apply." *Chaney v. Stewart*, 156 F.3d 921, 925 (9th Cir. 1998) (internal citations omitted). As shown above, the procedural requirements of the bylaws regarding reappointment do not so limit the discretion of the hospital. Therefore, Ramsey does not have a protected liberty interest in the renewal of his privileges, and that portion of his fourth cause of action also fails.

### c. Qualified Immunity

The only federal claim that survives is the third cause of action against Muna and Doe Defendants for wrongfully suspending or revoking his privileges before they expired in January 2014. Muna claims qualified immunity because "it was not clearly established or understood by every reasonable official that Plaintiff Ramsey had a protected liberty interest or property right in medical staff privileges." (Muna Joinder at 2, ECF No. 95.) Ramsey's argument that Defendants waived their right to raise qualified immunity because they failed to assert it when they moved to dismiss the initial complaint is without merit. (ECF No. 119 at 2.) He cites no law in support of this argument. It is well established that an amended complaint renders the original complaint a nullity. *Valadez-Lopez v. Chertoff,* 656 F.3d 851, 857 (9th Cir. 2011). Rule 15 of the Federal Rules of Civil Procedure, on amended pleadings, does not limit the range of responses available to a defendant.

"A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was]

17

doing violate[d] that right." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Here, the Court has determined that Ramsey had a property interest in his existing privileges in October 2013, stemming from the public hospital bylaws granting certain procedural protections before the suspension or revocation of privileges. *See Tate*, 617 Fed. Appx. at 725. The next question is whether that right was clearly established at the time of the violation. "Although precedent is certainly relevant to determining what a reasonable officer would know, 'it is not necessary ... that the very action in question has previously been held unlawful.'" *Rodriguez v. Swartz*, 899 F.3d 719, 732 (9th Cir. 2018) (quoting *Ziglar v. Abbasi*, __ U.S. __, 137 S.Ct. 1843, 1866, (2017)). "Although a case 'directly on point' is not required for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kramer v. Cullinan*, 878 F.3d 1156, 1163–64 (9th Cir. 2018) (citing *White v. Pauly*, __ U.S. __, 137 S.Ct. 548, 551 (2017)). The burden is on the plaintiff to demonstrate that the right was clearly established, and courts look for controlling authority or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Ramsey has not cited, nor has this Court found any controlling or persuasive case law, demonstrating that a constitutionally protected property right in existing hospital privileges was clearly established at the

18

time that Muna and Doe Defendants prevented him from accessing hospital records in October 2013. Therefore, since the constitutional right at issue was not clearly established at the time of violation, Muna and the Doe Defendants are entitled to qualified immunity.

## V. Conclusion

Ramsey has failed to state a claim in his first, second, and fourth causes of action because he does not have a property or liberty interest in the initial grant of privileges or renewal of privileges. The remaining federal cause of action does implicate a property interest in existing privileges. However, because that right was not clearly established at the time of the violation, Defendants have qualified immunity. Therefore, the Court GRANTS the Defendants' motions to dismiss with prejudice as to the federal-law claims. The Court declines to exercise pendant jurisdiction over the remaining Commonwealth-law claims and GRANTS the motions to dismiss those claims without prejudice.

The Clerk is directed to enter judgment for Defendants and close the case.

IT IS SO ORDERED on this 21st day of December, 2018.



**/s/ Frances M. Tydingco-Gatewood**
  **Designated Judge**